**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 25-mj-504 |
| ANIRUTH KUPPUSAMY | : | |

## GOVERNMENT'S MOTION FOR PRETRIAL DETENTION

The defendant, a 25-year-old man, is currently charged by complaint with violating 18 U.S.C. § 2251(a), arising from his exploitation of a minor teenaged girl who he persuaded, induced, and enticed into creating and sending a sexually explicit video. As set forth below, the defendant engaged in disturbing and violent conversations with the teenaged girl and elicited sexually explicit videos of her, all while knowing that she was a minor. The defendant is facing a mandatory minimum sentence of 15 years' imprisonment and a maximum of 30 years' imprisonment. *See* 18 U.S.C. § 2251(e) and there is a rebuttable presumption that he should be detained. *See* 18 U.S.C. § 3142(f)(1)(E). Because no condition or combination of conditions will reasonably assure the defendant's appearance as required and/or the safety of the community, the government moves pursuant to 18 U.S.C. §§ 3142(e) and (f) for a detention hearing and pretrial detention of the defendant.

## I.     BACKGROUND & EVIDENCE IN THIS CASE

On March 3, 2025, the Defendant was charged by complaint with one count of 18 U.S.C. § 2251(a). That same day, a search warrant was executed at the Defendant's residence. As alleged in the Complaint, on February 11, 2025, knowing that the victim was a minor, the defendant messaged the victim on Instagram:

> **totallykindday:** lemme see sum chop chop
> dont need to be elaborate pull your pants down

> **VICTIM:** mmm haven't shaved but i'll do anything for u
> **totallykindday:** you think i care about that i might not even let you shave when you at mine
> **VICTIM:** [liked an image]
> [sent video file 617124297573376 of a white female naked from the waist down. She then touches her vagina before directing the camera up to her chest where she lifts her shirt and bares her breasts]
> video for u
> **totallykindday:** amazing
> question
> what you smell likw
> **VICTIM:** mmnmnmn vanilla perfume and coconut oil
> **totallykindday:** no hoe ur pussy
> ur scent
> coconut oil is nice tho

The Defendant was aware that the Victim was a minor and sent her messages regarding her age, including one in which he stated he "need[ed] to come before urb day ill never get 16yo eva back after that...". Although not yet charged for this conduct, the Defendant repeatedly implored and enticed the minor Victim to send him sexually explicit videos on multiple occasions, which she did, and discussed meeting with her and taking her virginity, and getting her preganant.[1] For example, on February 12, 2025, the Defendant sent the victim a message stating "have morning wood now take ur slut responsibilities", then sent her a message, followed by the word "hoe" to which the Victim responded by sending the Defendant an explicit video of her breasts and pubic area. The Defendant responded by stating "my property for breakfast" and "im gonna piss on this and spit need my own property to chain u to a tree on a really muddy day and the chain is too short to stand up so ur forced to lie down ull be brown like me." On another occasion in February of 2025, the Defendant asks the Victim to do "a cutsign for me" and the Victim indicates she is willing to do so on camera. A cutsign is a term used by certain violent online communities to refer

---

[1] The Defendant searched routes to the Victim's school and house.

to an individual cutting themselves with a specific symbol or marking that identifies them as being associated with, or property of, a particular person. In addition, the messages recited in the Complaint, on several other instances the Defendant acknowledges that the Victim is a minor. For example, on December 7, 2024, another Instagram user writes to the Defendant asking, "how did you catch feelings for a 15 year old" to which the Defendant responds "16 and idk dude it was like a train crashed into me." The Defendant also acknowledged to the Victim that he was 25 and on another occasion discussed their "8 year age gap" when she asked if the Defendant could adopt her.

The Defendant also repeatedly expressed his interest in carrying out violent acts, his admiration for racist and extremist violent ideologies, and his awareness of the wrongfulness of his conduct. For example, in January of 2025, the Defendant and the Victim discuss a desire to be together by March 15, 2025, with the Defendant stating:

> totallykindday: i hope we'll be moved in together before march
> totallykindday: then we can watch tarrant on the anniversary together

March 15 is the anniversary of the two consecutive mass shootings committed by Brenton Tarrant in Christchurch, New Zealand at a mosque and Islamic Center, which resulted in the deaths of 51 people. Tarrant livestreamed his attack, which was posted to the Internet. Tarrant espoused a violent racially-motivated violent extremist and white supremacist ideology in a manifesto posted online before the attack. In addition, the Defendant discussed with another user that "we need one Christchurch to break the indian hate bandwagon." In response to the question of who would play the role of Tarrant and who would be the target population, the Defendant responded "hindus as target and a white Aryan hero as tarrant." A year prior, on March 15, 2024, the Defendant posted the following to his Instagram:



Terrorgram is a transnational terrorist group that has been sanctioned by the Office of Foreign Asset Control as specially designated global terrorists. As described by OFAC, "the group promotes violent white supremacism, solicits attacks on perceived adversaries, and provides guidance and instructional materials on tactics, methods, and targets for attacks, including on critical infrastructure and government officials. The group also glorifies those who have conducted such attacks." The group has been responsible for violent attacks around the world and in September of 2024, the Department of Justice charged two Terrorgram leaders in a 15 count indictment for soliciting hate crimes, soliciting the murder of federal officials, and conspiring to provide material support to terrorists.[2] One of those Terrorgram leaders used the online moniker Miss Gorehound. Notably, the Defendant sent the Victim several messages on March 3, 2025, stating "#freemissgorehound"; "omg with robert bowers"; "i wish miss gorehound didnt get

---

[2] *See https://www.justice.gov/archives/opa/media/1366641/dl?inline.*

- 4 -

arrested i wouldve introduced u." The Defendant also praised Timothy McVeigh, the Oklahoma City bomber, in his messages with the victim, stating "timothy mcveigh is the ultimate saint" and described Patrick Wood Crusius as a "saint". Crusius was responsible for a   mass shooting attack at a Walmart store in El Paso, Texas that killed 23 people and injured 22 others. Like many other mass shooters, Crusius posted a racially motivated violent extremist and white supremacist manifesto prior to the attack. Also located on the Defendant's phone were videos from the Christchurch shooting and the May 2022 mass shooting at Tops Grocery Store in Buffalo, New York. In May of 2022, Payton S. Gendron committed a mass shooting at a grocery store in Buffalo, New York and murdered ten African Americas. Gendron livestreamed his attack and wrote a racially motivated violent extremist manifesto espousing white supremacist ideology. He also saved videos were mass shooters were depicted as angels/saints and saved a video about the Columbine High School mass shooting.

The Defendant also repeatedly expressed his desire to harm others in messages with the Victim, stating, among other things: "im gonna kill your mom"; "anyway i constantly think about killing people too if it makes you feel any better im just very conscious it would hurt people I dont wanna hurt and it wouldn't accomplish anything and people would laugh at me and hate me if i didn't set a record"; "i want to stab someone so bad i think about it all the time"; "need to kill someone by handcuffing them in their own car and putting a brick on the accelerator into a lake." In addition, he sent the Victim schematics of how to construct homemade firearms, including what appears to be a semi-automatic weapon with an extended magazine, a "pipe pistol", and a lighter designed to shoot a single round as well as a photograph of a lighter with parts removed. The Defendant also discussed buying guns for the Victim and discussed a particular firearm which he

said "u can get more easily in full auto." Moreover, a review of the Defendant's phone revealed searches for firearms and numerous messages with others about obtaining firearms and ammunition, including stating that he was look at "obtaining a gun in case i meet w that girl lol" and his need to "get a new gun and keep it better hidden this time kek." In addition, in 2022, the Defendant was issued a permit to carry a firearm and in fact, did acquire a firearm.

In March of 2025, the Victim made Instagram posts referencing "Sam Rupnow" including a post that stated "oomf shot up her school while i was in the psych ward at least wait for me to get out." Natalie Samantha Rupnow was a 15-year-old student who committed a shooting attack at Abudant Life Christian School in Madison, Wisconsin, that resulted in the deaths of three people and which injured six others. Apparently in response to those posts, the Defendant advised the Victim, "dont say the shit you say w me regarding plans intentions etc there are 1000% informants in tcc circles trust no one but me" and tells the Victim "slitting ur throat and poasting it on story if u talk to any of ur mutuals btw #iloveyou".

On or about January 27, 2025, the Victim informed the Defendant that she was taking her phone to the police. In response, the Defendant discussed how to delete evidence of his relationship with the Victim with another Instagram user, including discussing "wiping" his social media accounts. Again, on February 9, 2025, the Defendant told another Instagram user that he was worried about alienating the Victim, noting "if I make her an enemy she could start targeting me for doxing cp ect." CP is believed to be a reference to child pornography, revealing that the Defendant is aware that the images he has solicited from the Victim are illegal. The Defendant and the Victim also discussed committing murder, with the Defendant stating, "actually the farther ones are better" "cuz it's a pain in the ass to prosecute across different jurisdictions if the feds

aren't involved"; "look up clearance rates lol murder is not actually enforceable in America"; "when you have no relationship to the victim there's no camera evidence no dna and the case isnt high profile plus there's already high crime or low resources;" "it's impossible to solve".

## II.    LEGAL ARGUMENT

Title 18 U.S.C. § 3142(g) sets forth the factors the Court considers in determining whether a person should be released or detained:

1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

2) the weight of the evidence against the person;

3) the history and characteristics of the person, including

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release

Pursuant to 18 U.S.C. § 3142(e)(3)(E), there is a rebuttable presumption in favor of detention for individuals who, like this defendant, are charged with violating 18 U.S.C. §2251. The dangers surrounding these types of offenses are widely recognized. *See McKune v. Lile*, 536

U.S. 24, 33 (2002) (emphasizing Department of Justice and Federal Bureau of Investigation statistics reflecting substantially increased likelihood of repeat arrests for sex offenders); *United States v. Pugh*, 515 F.3d 1179, 1199 (11th Cir.2008) (discussing influence of sexual offender recidivism in passage of various provisions in the PROTECT Act); *Report of Chairman Sensenbrenner*, H.R. Rep. 107-527, on amendment of 18 U.S.C. § 3583 (expressing congressional determination that "sex offenders and child molesters are four times more likely than other violent criminals to recommit their crimes" and referencing studies and findings documenting (1) a significantly higher rate of recidivism among sexual predators, (2) the number of undetected offenses which such individuals actually commit and (3) the psychological impact such offenses have on the victims); *Doe v. Bredesen*, 507 F.3d 998, 1006 (6th Cir.2007) (noting the legislative findings in numerous states passing sex offender registration systems reflecting the "undisputed high risk of recidivism" by such sex offenders).

A defendant may rebut the presumption of pretrial detention by presenting "some credible evidence" that he will not pose a threat to the community upon his release. *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir.1986). Even if the defendant presents evidence sufficient to rebut the presumption, "the presumption does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *United States v. Abad,* 350 F.3d 793, 797 (8th Cir.2003) (quoting *United States v. Mercedes,* 254 F.3d 433, 436 (2d Cir.2001); *United States v. Chagra,* 850 F.Supp. 354, 358 (W.D.Pa.1994) (Diamond, J.) (the presumption once rebutted does not disappear, but "remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to the factors listed in § 1342(g).")

The nature and circumstances of the case and the evidence against the Defendant counsel in favor of detention. As set forth above, the Defendant solicited sexually explicit videos from a minor, knowing that she was a minor. In addition, the Defendant engaged in violent and extremist conversations with the minor, in which they discussed their admiration for individuals who have committed mass casualty terrorist attacks and their desire to commit violent acts themselves. The evidence against the Defendant is strong, consisting not only of his communications with the Victim but also evidence found on his cell phone.

Here, the defendant poses a clear danger to the community, and there is no condition or combination of conditions that could assure the safety of the community if he were to be released. There is simply no way to effectively monitor (or prevent) this defendant's access to the internet, which is the primary medium through which he committed his crimes:

(1)    Access to the internet is possible through desktop and laptop computers, cell phones, iPods, iPads, and even gaming devices. There is no way to prevent the defendant from purchasing or using an Internet accessible device without the knowledge of Pretrial Services.

(2)    Storage devices can range in size, down to the size of a postage stamp, making it impossible for a Pretrial Services officer to locate. There is no way to prevent the defendant from obtaining any storage medium, and no amount of supervision that would detect it in his home or elsewhere.

(3)    There is no way to monitor whether the defendant will access the Internet – and child pornography – using a public library's computers, using other people's electronic equipment, or Internet access at any other location, given that there is free WiFi access from any number of public places.

(4)    Even if this Court were to order that computer monitoring software be installed on the defendant's home computer(s), there would be no way to detect if he were to subvert the computer monitoring software by simply inserting a device with its own operating system into the computer being monitored, thereby bypassing the monitoring software altogether. The defendant's activities would be completely undetected, and the Pretrial Services officer – and this Court – would instead be issued a report that the defendant is in "compliance."

- 9 -

Indeed, it is difficult to conceive of any supervision that would detect the defendant's criminal activities. Pre-Trial Services is limited to inspection of items that are in plain view of the officers. Nor is Pretrial Services permitted to seize electronic evidence. "The ubiquitous presence of the internet and the all-encompassing nature of the information it contains are too obvious to require extensive citation or discussion." *United States v. Schenberger*, 498 F.Supp.2d 738, 745 (D. N.J. 2007) ("This Court is not persuaded that meaningful assurances can be given that defendant's access to the internet can be stopped. Even if the defendant could somehow be prohibited from viewing, or exchanging images of child pornography, it is difficult to conceive of measures that could confidently assure that defendant would not communicate with others and encourage the distribution of child pornography and related illicit activities."); *see also United States v. Voelker*, 489 F.3d 139, 145 (3d Cir.2007) (recognizing the dangers associated with child pornography offenses and the difficulty to effectively monitor given the accessibility of the Internet).

Moreover, the defendant committed his offenses while living at home under his parent's supervision. Accordingly, there is no reason to believe that they will be able to adequately supervise him. The Government also notes that the Defendant's father initially provided false information to the FBI about the location of the Defendant's passport, further supporting a belief that he poses a risk of flight.

The defendant poses a clear danger to the community, and there is no condition or combination of conditions that could assure the safety of the community if he were to be released.

- 10 -

There is simply no way to ensure compliance with any conditions this Court may impose, or to eradicate the very clear danger he poses.

Finally, prison is a certainty for this defendant if convicted of these crimes– he faces a mandatory minimum of 15 years' imprisonment. The anticipation of this severe sentence gives the defendant every incentive to flee, knowing that he will spend decades in prison if convicted, and makes him even more of a danger to children in the community, knowing that his release on bail may be the last time he is free in many years.

**III.    CONCLUSION**

When all these factors are viewed in light of the presumption that the Defendant should be detained, the substantial sentence the Defendant faces if convicted, and the unavailability of less restrictive conditions, it is clear that no condition or combination of conditions will reasonably assure the presence of the defendant as required and/or the safety of the community.

WHEREFORE, the government respectfully submits that its Motion for Defendant's Pretrial Detention should be granted.

Respectfully submitted,

DAVID METCALF
United States Attorney


/s/ Danielle S. Bateman
Danielle S. Bateman
Assistant United States Attorney

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 25-mj-504 |
| ANIRUTH KUPPUSAMY | : | |

### PRETRIAL DETENTION ORDER

AND NOW, this day of March, 2025, after an evidentiary hearing and argument of counsel for the government and the defendant, the Court finds that:

    (a)    the government has proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required; and

    (b)    the government has proved by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community, as required by Title 18, United States Code, Section 3142(e)

The Court makes the following findings of fact:

This case is appropriate for detention under Title 18, United States Code, Section 3142(e) because:

    1.    There is probable cause to believe that the defendant has violated Title 18, United States Code, Section 2251.

    2.    The evidence in this case is strong.

a.      Images and messages were recovered from the defendant's social media accounts in which the Defendant persuaded, induced, and enticed a minor to provide him with child pornography.

3.      The total maximum statutory penalty defendant faces is 30 years' imprisonment, with a mandatory minimum of 15 years imprisonment. Accordingly, the defendant has a substantial incentive to flee.

4.      There do not appear to be less restrictive conditions available that will assure the defendant's appearance in court and provide for the safety of the community and the presumption of detention has not been rebutted in this case.

5.      The strength and nature of the case against the defendant, combined with the strong likelihood that the defendant will be incarcerated for a significant period of time, increases the high risk that the defendant will not appear as required by the Court, and his danger to the community.

6.      As there is probable cause to believe that the defendant committed the crime for which he is charged, it must be presumed, subject to rebuttal by the defendant, that no condition of release, or combination of conditions, will reasonably assure the safety of the community and/or the defendant's presence as required. 18 U.S.C. § 3142(e), (f). The defendant has failed to rebut these presumptions.

Therefore, IT IS ORDERED that the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; that the defendant be afforded reasonable opportunity for private consultation with counsel; and that, on

order of a Court of the United States, or on request of an attorney for the government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

BY THE COURT:

_____

HONORABLE SCOTT W. REID
United States Magistrate Judge

<u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the Government's Motion for Pretrial Detention, and

Proposed Order was served by electronic mail on the following defense counsel:


Zak T. Goldstein, Esq.
ztg@goldsteinmehta.com

s/ Danielle S. Bateman
DANIELLE S. BATEMAN
Assistant United States Attorney


Date:   March 14, 2025

4